758 N.W.2d 719 (2008)
2008 ND 222
In the Matter of G.R.H.
John P. Van Grinsven III, Ward County State's Attorney, Petitioner and Appellee
v.
G.R.H., Respondent and Appellant.
No. 20080102.
Supreme Court of North Dakota.
December 16, 2008.
*720 John P. Van Grinsven III, State's Attorney, Minot, N.D., petitioner and appellee; submitted on brief.
Ryan D. Sandberg, Minot, N.D., for respondent and appellant; submitted on brief.
SANDSTROM, Justice.
[¶ 1] G.R.H. appeals a district court order denying his petition for discharge from commitment as a sexually dangerous individual. We affirm the order.

I
[¶ 2] In 2004, G.R.H. was civilly committed as a sexually dangerous individual, and we affirmed the district court's commitment *721 order. Matter of G.R.H., 2006 ND 56, ¶ 1, 711 N.W.2d 587. In August 2005, while this Court was reviewing G.R.H.'s initial commitment, he requested a discharge hearing, but no action was taken pending receipt of our decision. In August 2006, G.R.H. again requested a discharge hearing, which was held in December 2006. Following that hearing, the district court found that clear and convincing evidence showed G.R.H. remained a sexually dangerous individual. In October 2007, G.R.H. again requested a discharge hearing, and one was held in March 2008. The district court appointed Dr. Robert G. Riedel as G.R.H.'s independent expert evaluator. On behalf of the State, Dr. Lincoln D. Coombs conducted a sexually dangerous individual annual reevaluation of G.R.H.
[¶ 3] The two experts disagreed as to whether G.R.H. remained a sexually dangerous individual. Dr. Coombs concluded G.R.H. remained a sexually dangerous individual on the basis of an interview with G.R.H. and the reevaluation of G.R.H.'s prior psychological evaluations. Dr. Coombs arrived at either an equal or higher risk of reconviction and rearrest than Dr. Riedel. In addition to G.R.H.'s previous antisocial personality disorder, Dr. Coombs diagnosed G.R.H. with paraphilia not otherwise specified hebephilia, defining hebephilia as the sexual attraction to adolescents, on the basis of new information G.R.H. revealed about having had sexual relations with several other adolescent females not previously known.
[¶ 4] Conversely, Dr. Riedel testified G.R.H. was not a sexually dangerous individual. Dr. Riedel based his conclusion on the scores of several risk assessment instruments, a two-and-a-half hour interview with G.R.H., and his review of all G.R.H.'s State Hospital records, including all the records that were available from the State Penitentiary. The battery of actuarial tests included the Kaufman Test of Educational Achievement, the Woodcock-Johnson Test of Cognitive Abilities, the Clarke Sexual History Questionnaire, the Personality Assessment Inventory, the RRASOR, the Static-99, the MnSost-R, and the PCL-R2nd. Dr. Riedel diagnosed G.R.H. with "psychoactive substance abuse," provisional and in long-term remission in a controlled setting, and found personality disorder not otherwise specified with some borderline, antisocial, narcissistic, schizophrenic-like behavior, and paranoid features. He explained that a diagnosis of "psychoactive substance abuse" means the person abuses more than one substance that has a psychological effect. Dr. Riedel acknowledged during his testimony, however, that he did not give much attention to the information about the additional victims, because he was of the impression they were not adolescents. He conceded that if the victims' ages were correct, a diagnosis of sexual perversion of sexual attraction to adolescents would be more justified.
[¶ 5] Following the March 2008 hearing, the district court denied G.R.H.'s petition for discharge, finding the State had proven by clear and convincing evidence that G.R.H. continued to be a sexually dangerous individual. G.R.H. contends the district court erred in finding that he met the second and third prongs of a sexually dangerous individual definition in N.D.C.C. § 25-03.3-01(8).
[¶ 6] The district court had jurisdiction of the discharge hearing under N.D. Const. art. VI, § 8, and N.D.C.C. § 25-03.3-02. The appeal from the order was timely under N.D.C.C. § 25-03.3-19. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25-03.3-19.

*722 II
[¶ 7] Applying a modified clearly erroneous standard of review, we affirm a district court order denying a petition for discharge from commitment as a sexually dangerous individual unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. Matter of E.W.F., 2008 ND 130, ¶ 8, 751 N.W.2d 686. Section 25-03.3-18(4) of the North Dakota Century Code requires the State to prove by clear and convincing evidence that the committed individual remains a sexually dangerous individual, which means proving the individual:
"[has] engaged in sexually predatory conduct . . . has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."
N.D.C.C. § 25-03.3-01(8). In Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court concluded that commitment as a sexually dangerous individual cannot constitutionally be sustained without determining that the person to be committed has serious difficulty in controlling his or her behavior. Therefore, consistent with N.D.C.C. § 1-02-38(1), we have construed the definition of a sexually dangerous individual to require that there must be a nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons. E.W.F., at ¶ 10. All sexually predatory conduct, including that which did not result in a charge or conviction, may be considered under a N.D.C.C. § 25-03.3-01(8) analysis. Interest of P.F., 2006 ND 82, ¶ 20, 712 N.W.2d 610. In cases of conflicting testimony, the district court is the best credibility evaluator. Matter of Hehn, 2008 ND 36, ¶ 23, 745 N.W.2d 631. "It is not the function of this Court to second-guess the credibility determinations made by the trial court." Id.

A
[¶ 8] G.R.H. argues the State failed to provide clear and convincing evidence showing he has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction. Dr. Coombs diagnosed G.R.H. with the sexual distortion of sexual attraction to adolescents. According to Dr. Coombs' reevaluation report, this diagnosis had been considered by both original evaluators in 2004, but it was thought there was insufficient evidence to establish it. Dr. Coombs testified additional evidence had now surfaced supporting such a diagnosisduring his reevaluation, G.R.H. had admitted to twelve additional female adolescent victims five years or more his junior at the time of victimization, nine of whom he counted were after G.R.H.'s release from his first prison term for sexual offense against an adolescent. In addition to the offenses for which he had been convicted, G.R.H. has admitted to having had sexual contact with a 13- and a 14-year-old girl when he was 19; a 17-year-old girl when he was 24; a 13-, a 14-, a 16-, and two 17-year-old girls when he was 25; and a 16-year-old girl when he was 27. In Dr. Coombs' opinion, G.R.H.'s sexual contact with nine adolescent girls after his release from prison for his gross sexual imposition conviction indicates a serious difficulty in controlling his behavior. The record shows that even Dr. Riedelthe independent evaluatorwho *723 initially disagreed, conceded that if the recently disclosed adolescent female victims' ages were correct, the move from the rule-out level to the diagnostic level of hebephilia would be more justified. At the hearing, he acknowledged he did not give much attention to the information about these additional victims because he was of the impression they were not adolescents.
[¶ 9] Dr. Coombs also testified G.R.H.'s two convictions for failure to register as a sex offender are further indicators of G.R.H.'s difficulty in controlling his behavior. Further, in his reevaluation report, Dr. Coombs noted G.R.H. presents a tolerant attitude toward sex-offending by breaking the treatment rules, by engaging in sexual contact with his visitors, and by placing sex-line calls in order "to alleviate boredom, boost his ego or address his loneliness and depression." The report further provides G.R.H. had said that he targeted teens because of his low self-esteem. Although G.R.H.'s current treatment notes did not reveal an interest in adolescent sexual activities, Dr. Coombs, nonetheless, testified that G.R.H. is in need of significantly more treatment to deal with the information about the new victims he recently revealed.
[¶ 10] Dr. Coombs further testified G.R.H. still suffers from an antisocial personality disorder on the basis of G.R.H.'s admission of breaking the treatment rules by placing sex-lines calls with unauthorized credit cards for a total of $4,000 and by engaging in sexual contact with his current girlfriend and an ex-girlfriend during their visits to the North Dakota State Hospital. According to Dr. Coombs, the antisocial personality disorder is a chronic, long-term disorder manifested by a history of breaking the law, rule violations, deceit, impulsivity, lack of remorse, and reckless disregard for the rights of others, most of which G.R.H. has exhibited.
[¶ 11] In this case, the district court found Dr. Coombs' testimony and diagnosis of G.R.H. more reliable, clarifying that although it did not have problem with Dr. Riedel's credibility, it found his opinions less informed in light of G.R.H.'s recent admission of several other female adolescent victims. The evidence supports the district court's finding that the State met its burden of proving by clear and convincing evidence that G.R.H. has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction.

B
[¶ 12] G.R.H. further argues the State failed to prove by clear and convincing evidence that he is likely to engage in further acts of sexually predatory conduct. Dr. Coombs testified G.R.H. is likely to engage in such acts on the basis of G.R.H.'s reevaluated scores from previously administered actuarial tests, the new information about additional adolescent victims, and G.R.H.'s chart notes from the State Hospital showing that he not only failed to complete treatment but was demoted from stage four to stage two because of his lack of self-control. Dr. Coombs' new score of G.R.H.'s RRASOR result showed G.R.H. had a twenty-one percent likelihood of reoffending in ten years. On the Static-99, Dr. Coombs' new score placed G.R.H. at a fifty-two percent likelihood of reconviction in fifteen years, and on the MnSOST-R, Dr. Coombs' adjusted score placed G.R.H. at a six-year likelihood of rearrest rate for a sexual offense of fifty-six percentage. He testified the combination of an antisocial personality disorder and the sexual perversion of sexual attraction to adolescents, supported by G.R.H.'s reoffending on several other adolescent females after his gross sexual imposition conviction, separates *724 G.R.H. from the ordinary recidivist convicted in criminal cases and makes it likely he will reoffend.
[¶ 13] The record shows Dr. Riedel, too, evaluated G.R.H.'s risk of reoffending and rearrest, scoring him at different risk rates. We will not engage in "a contest over percentage points" when determining whether an individual falls under the definition of a sexually dangerous individual, which means that certain scores of the risk assessment instruments do not preclude the fact finder from determining whether clear and convincing evidence supports a civil commitment. Matter of Hehn, 2008 ND 36, ¶ 21, 745 N.W.2d 631. In this case, the district court was presented with clear and convincing evidence beyond G.R.H.'s actuarial scores that he is likely to reoffend. The record shows Dr. Coombs concluded in his report that:
Based on [G.R.H.'s] overall performance in treatment, it does not appear that he is ready for a less restrictive alternative.. . . It appears he lacks the self-discipline necessary to abide by the rules of the program. This lack of self-discipline is very concerning when it comes to considering him for release to the community. He has used sex to cope with feelings of inferiority and depression and has justified his rule breaking behavior. These cognitive and attitudinal factors were very likely present when he was activ[ely] offending with teenage girls.
The testimony presented shows the combination of G.R.H.'s disorders renders him more likely to engage in further acts of sexually predatory conduct. More importantly, the testimony about G.R.H.'s rule-breaking behavior while in treatment and the recently disclosed incidents of several additional sexually predatory acts, many of which occurred after G.R.H. was released from prison for a gross sexual imposition conviction, indicate a serious difficulty in controlling his behavior. This supports the district court's finding that G.R.H. is likely to reoffend without receiving adequate treatment in a closed setting. As we stated in Matter of Hehn, evidence of serious difficulty in controlling one's behavior in this context distinguishes a sexually dangerous individual from the "dangerous but typical recidivist in an ordinary criminal case." 2008 ND 36, ¶ 19, 745 N.W.2d 631 (citation omitted). Therefore, we conclude the district court did not err in finding that the State met its burden of proof by providing clear and convincing evidence showing G.R.H. is likely to engage in further acts of sexually predatory conduct.

III
[¶ 14] We affirm the district court order denying G.R.H.'s petition for discharge from commitment as a sexually dangerous individual.
[¶ 15] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.
KAPSNER, Justice, concurring.
[¶ 16] I concur.
[¶ 17] Justice Stevens has described the Illinois sexual civil commitment law as "a shadow criminal law" conflicting with the liberty and individual dignity otherwise characterizing our free society. Allen v. Illinois, 478 U.S. 364, 384, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (Stevens, J., dissenting). In Justice Stevens' view, civil commitment of sexual violators conflicted with those core values because the commitment statute lacked the constitutional protections applied in a criminal case, even though the result of both is deprivation of liberty.
*725 [¶ 18] States have defended, successfully, constitutional challenges against sexual predator commitment laws on the basis that such laws are not punitive in nature. Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); Allen, 478 U.S. at 373-74, 106 S.Ct. 2988. The reasoning usually touted to demonstrate that such laws are not punitive is the express purpose to provide treatment for the civilly committed individual. Hendricks, 521 U.S. at 367, 117 S.Ct. 2072; Allen, 478 U.S. at 369, 106 S.Ct. 2988.
[¶ 19] Section 25-03.3-13, N.D.C.C., also provides for treatment:
If the respondent is found to be a sexually dangerous individual, the court shall commit the respondent to the care, custody, and control of the executive director. The executive director shall place the respondent in an appropriate facility or program at which treatment is available. The appropriate treatment facility or program must be the least restrictive available treatment facility or program necessary to achieve the purposes of this chapter. The executive director may not be required to create a less restrictive treatment facility or treatment program specifically for the respondent or committed individual. Unless the respondent has been committed to the legal and physical custody of the department of corrections and rehabilitation, the respondent may not be placed at and the treatment program for the respondent may not be provided at the state penitentiary or an affiliated penal facility. If the respondent is found not to be a sexually dangerous individual, the court shall discharge the respondent.
[¶ 20] In Allen, the specific constitutional protection that was asserted to be lacking in the civil proceeding, although the lack did not make the statute constitutionally infirm, was the 5th Amendment privilege against self-incrimination. Allen was ordered to submit to two psychiatric examinations prior to his initial commitment. Those examinations provided, in part, the basis for his commitment because they established his mental illness and his propensity to commit sexual assaults.
[¶ 21] The circumstances in Allen were different from those G.R.H. has experienced. The trial court had ruled that Allen's statements to the psychiatrists were not themselves admissible. The Illinois Supreme Court had previously held "a defendant's statements to a psychiatrist in a compulsory examination . . . may not be used against him in any subsequent criminal proceedings." Allen, 478 U.S. at 367-68, 106 S.Ct. 2988.
[¶ 22] The Allen court held the 5th Amendment did not apply to the Illinois law under the circumstances reviewed because the law was civil, not punitive, in nature. However, it also noted:
As petitioner correctly points out, however, the civil label is not always dispositive. Where a defendant has provided "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" that the proceeding be civil, it must be considered criminal and the privilege against self-incrimination must be applied. 448 U.S., at 248-249, 100 S.Ct., at 2641. We think that petitioner has failed to provide such proof in this case.
Allen, 478 U.S. at 369, 106 S.Ct. 2988 (alterations in original).
[¶ 23] G.R.H.'s continuing, indefinite confinement is based on statements he made during the course of treatment. The information became known through what was described as a "homework assignment" and polygraph testing. Thus, it was his self-incrimination that forms the basis *726 for his continuing deprivation of liberty. Majority opinion at ¶ 8. G.R.H.'s statements are not being used in a criminal proceeding; were they used in a criminal proceeding, the term of incarceration would be limited by statute. No such limits exist in civil commitments. Further, our statutes specifically abrogate claims of confidentiality and privilege normally associated with treatment in proceedings under chapter 25-03.3. Section 25-03.3-05, N.D.C.C., provides:
1. Notwithstanding any other provision of law requiring confidentiality of information about individuals receiving care, custody, education, treatment, or any other services from the state or any political subdivision, any confidential information about a respondent or committed individual must be released to a state's attorney for proceedings pursuant to this chapter unless release results in the loss of federal funds. The physician-patient privilege and psychotherapist-patient privilege do not apply to communications relevant to an issue in proceedings to commit an individual as a sexually dangerous person if the physician or psychotherapist in the course of diagnosis or treatment determines the patient is in need of commitment and to communications with a committed individual. The provision of any confidential or privileged information to the state's attorney does not render the state, any political subdivision, or any state or political subdivision official or employee, or other person liable pursuant to any criminal or civil law relating to confidentiality or privilege.
2. For purposes of this chapter, the disclosure of individually identifiable health information by a treating facility or mental health professional to the state hospital or a mental health professional, including an expert examiner, is a disclosure for treatment. A retained or appointed counsel has the right to obtain individually identifiable health information regarding a respondent in a proceeding under this chapter. In any other case, the right of an inmate or a patient to obtain protected health information must be in accordance with title 45, Code of Federal Regulations, part 164.
Committed individuals, therefore, know they may be subject to further confinement if they comply with treatment by making self-incriminating statements as part of their therapy. Section 25-03.3-16, N.D.C.C., places limits on the admissibility of the ultimate determinations of the civil commitment court in a subsequent criminal proceeding but does not address the evidence on which the determinations are made.
[¶ 24] On the other hand, failure to comply with treatment is also used as the basis for continuing confinement. Matter of M.D., 2008 ND 208, ¶ 11, 757 N.W.2d 559; Matter of E.W.F., 2008 ND 130, ¶ 15, 751 N.W.2d 686; Matter of Barrera, 2008 ND 25, ¶ 13, 744 N.W.2d 744; Matter of M.D., 1999 ND 160, ¶ 37, 598 N.W.2d 799.
[¶ 25] The privilege against self-incrimination:
"not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also `privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'"
Allen, 478 U.S. at 368, 106 S.Ct. 2988 (quoting Minnesota v. Murphy, 465 U.S. *727 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)). If disclosure is demanded as a prerequisite to treatment and either the disclosure or the failure to comply is the basis for continuing confinement, the ability to assert a privilege has been lost. In a criminal context, the exercise of the privilege against self-incrimination does not change the evidentiary burden; in this civil context, the exercise of the privilege can be considered for purposes of meeting the evidentiary burden. Matter of M.D., 2008 ND 208, ¶ 11, 757 N.W.2d 559. For purposes of this dilemma, the fact that the resulting confinement will occur at a treatment center does not seem meaningful. Based on either therapeutic compliance or non-compliance, the State is able to continue to confine committed individuals involuntarily and indefinitely.
[¶ 26] G.R.H. has not challenged whether our statutory framework and its application have rendered the civil commitment "punitive" and thus requiring constitutional protections. Because he does not challenge on that basis, we necessarily do not examine the issue. This case should not be understood, however, to mean the issue could not be examined, if properly raised.
[¶ 27] G.R.H. only challenges whether, based on the evidence admitted, there is clear and convincing evidence required by the statute. Under our standard of review, when you include the self-incriminating disclosures made by G.R.H., the decision of the district court is affirmable.
[¶ 28] CAROL RONNING KAPSNER, J., concur.