2010 ND 171

In the Interest of Thomas MAEDCHE

Lloyd C. Suhr, Assistant State's Attorney, Petitioner and Appellee

v.

Thomas Maedche, Respondent and Appellant.

No. 20090268.

Supreme Court of North Dakota.

Aug. 31, 2010.

Lloyd C. Suhr, Assistant State's Attorney, Bismarck, N.D., for petitioner and appellee.

Justin J. Vinje, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] Thomas Maedche appeals a district court order involuntarily committing him as a sexually dangerous individual. He argues that North Dakota's civil commitment statute is void for vagueness and that self-incrimination and due process guarantees preclude the use of his treatment-related disclosures in a civil commitment proceeding. We affirm.

I

[¶ 2] Maedche was convicted of indecent exposure after exposing himself and masturbating in front of a nine-year-old girl during a sleepover at a hotel. After the district court accepted Maedche's guilty plea, he submitted to sex offender risk assessment as part of the pre-sentence investigation report. The screening tools indicated a high risk of re-offense. Maedche also underwent a psychological

evaluation during which he denied the conduct alleged during the sleepover. He also denied sexual attraction to children and engaging in any atypical sexual behavior in adulthood. The evaluating psychologist, Edward Kehrwald, Ph.D., had access to Maedche's records, which reflected inappropriate sexual activity with a neighbor girl in 1993 (when Maedche was a preteen) and the sexual assault of three girls in 1995. Maedche self-reported one past sexually-related incident with young girls when he was approximately twelve years old, but he was not clear about what had occurred. Dr. Kehrwald did not recommend an evaluation for civil commitment, but instead recommended outpatient treatment, closely supervised probation, and long-term monitoring or community aftercare. Dr. Kehrwald also recommended a polygraph examination to clarify the offense and his denial of conduct. Lincoln Coombs, Psy.D., a forensic psychologist at the North Dakota State Hospital, also reviewed Maedche's records and did not recommend an evaluation for civil commitment. Dr. Coombs wrote that despite Maedche's high scores on the risk assessment instruments, Maedche had been convicted of only one non-contact sexual offense as an adult.

[¶ 3] Maedche was released from the Burleigh County Detention Center in November 2008 and reported to his probation officer the next day. During the meeting, Maedche admitted exposing himself in front of the nine-year-old girl at the sleepover. He stated he had always been attracted to young girls. While on probation, Maedche attended outpatient sex offender therapy.

[¶ 4] In January 2010, Maedche submitted to a pre-polygraph interview and polygraph examination, as required by his treatment and probation conditions. During the pre-polygraph interview, he disclosed previously unknown sexual contact with minors that had occurred when he was an adult. The disclosures "filled in a time frame" about which his probation officer had previously been unaware. The probation officer watched a recording of the interview and testified about its contents at the probable cause hearing. He testified that during the interview, Maedche admitted to and provided details of indecent exposure and molestation of young children as well as his theft and purchase of girls' and women's underwear for sexual gratification. Maedche stated he searches for "non-nude" pornography on the Internet, which refers to photographs of children who are not nude but who are posed suggestively. Finally, Maedche was asked during the pre-polygraph interview whether, given the opportunity, he would take sexual advantage of someone in his care or custody if he knew no one would find out. After initially responding no, Maedche stated, "And I knew I would get away with it? Yes, I would. I have no doubt in my mind right now that I would. Right now I'm hoping the treatment changes that." The polygraph examiner scored Maedche's polygraph examination as inconclusive—neither conclusively deceptive nor truthful.

[¶ 5] In February 2010, shortly after the interview and polygraph examination, the State petitioned to commit Maedche as a sexually dangerous individual. After a hearing, the district court found probable cause to believe Maedche may be a sexually dangerous individual and ordered an evaluation. Maedche was evaluated by Robert Lisota, Ph.D., a forensic psychologist at the North Dakota State Hospital, and by Stacey Benson, Psy.D., an independent forensic psychologist. Each completed a report and testified before the district court at the treatment hearing. The two psychologists disagreed as to whether

Maedche met the statutory definition of a sexually dangerous individual.

[¶ 6] Dr. Lisota diagnosed Maedche with pedophilia, exhibitionism, fetishism, a history of alcohol and cannabis abuse, and antisocial personality disorder. He concluded Maedche met the statutory definition of a sexually dangerous individual. Dr. Benson diagnosed Maedche with pedophilia and antisocial personality disorder. She disagreed that Maedche met the statutory definition of a sexually dangerous individual, because she saw no evidence that he had serious difficulty controlling his behavior since his release from incarceration and because she concluded Maedche was not likely to engage in further acts of sexually predatory conduct. The district court concluded Maedche is a sexually dangerous individual and committed him to the care, custody, and control of the executive director of the Department of Human Services.

[¶ 7] Maedche appeals, arguing that N.D.C.C. ch. 25–03.3 is unduly vague and subject to employment in an arbitrary or discriminatory manner and that self-incrimination and due process guarantees preclude the use of a sex offender's treatment-related disclosures in a civil commitment proceeding.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25–03.3–02. The appeal was timely under N.D.C.C. § 25–03.3–19. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25–03.3–19.

## II

[¶ 9] We apply "a modified clearly erroneous" standard of review to commitments of sexually dangerous individuals. *Matter of G.R.H.*, 2006 ND 56, ¶ 8, 711 N.W.2d 587. We will affirm a district court's commitment order unless the order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence. *Id.*

[¶ 10] Chapter 25–03.3 of the North Dakota Century Code authorizes the involuntary civil commitment of a sexually dangerous individual. A sexually dangerous individual is defined as:

> [A]n individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). Additionally, the United States Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), held commitment as a sexually dangerous individual is unconstitutional unless the person is found to have serious difficulty controlling his or her behavior. *Matter of Hanenberg*, 2010 ND 8, ¶ 8, 777 N.W.2d 62. Therefore, consistent with N.D.C.C. § 1–02–38(1), we have construed the definition of a sexually dangerous individual to require a connection between the disorder and dangerousness, including evidence showing the person has serious difficulty controlling his behavior, which distinguishes a sexually dangerous individual from other dangerous persons. *Id.*

[¶ 11] All sexually predatory conduct may be considered when determining whether someone is a sexually dangerous individual, including conduct not resulting in a charge or conviction. *Matter of A.M.*, 2009 ND 104, ¶ 10, 766 N.W.2d 437. The district court is the best credibil-

ity evaluator in cases of conflicting testimony, and we will not second-guess its credibility findings. *Id.*

[¶ 12] Maedche does not argue the district court was clearly wrong in concluding he is a sexually dangerous individual on the basis of the evidence presented, and he does not dispute the statutory definition was met. Instead, he argues: N.D.C.C. ch. 25–03.3 is unduly vague and subject to employment in an arbitrary or discriminatory manner; and self-incrimination and "due process" guarantees preclude the use of a sex offender's treatment-related disclosures in a civil commitment proceeding.

### A

■ [¶ 13] Maedche first argues chapter 25–03.3 of the North Dakota Century Code is unconstitutional because it is "void for vagueness." Maedche argues the civil commitment statute violates his "due process rights," because it fails to adequately explain when commitment proceedings should be brought against a person. Maedche first raised the issue in a motion to dismiss before the district court.

[¶ 14] In *City of Fargo v. Salsman,* 2009 ND 15, 760 N.W.2d 123, we described the standards governing a void-for-vagueness challenge:

"All laws must meet two requirements to survive a void-for-vagueness challenge: (1) the law must create minimum guidelines for the reasonable police officer, judge, or jury charged with enforcement of the statute; and (2) the law must provide a reasonable person with adequate and fair warning of the proscribed conduct." *City of Belfield v. Kilkenny,* 2007 ND 44, ¶ 10, 729 N.W.2d 120. We use the "reasonable person" standard in reviewing a statute to determine whether these two dictates are satisfied. *Id.* A law is void for vagueness if "it either forbids or requires 'the do-

ing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *State v. Tibor,* 373 N.W.2d 877, 880 (N.D.1985) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322] (1926)). We review de novo a claimed violation of a constitutional right. *Kilkenny,* at ¶ 8. We construe statutes to avoid constitutional infirmities, and any doubt must be resolved in favor of the statute's constitutionality. *Id.*

*City of Fargo v. Salsman,* 2009 ND 15, ¶ 21, 760 N.W.2d 123.

[¶ 15] Section 25–03.3–03, N.D.C.C., states, "If it appears that an individual is a sexually dangerous individual, the state's attorney may file a petition in the district court alleging that the individual is a sexually dangerous individual and stating sufficient facts to support the allegation." N.D.C.C. § 25–03.3–03. A "sexually dangerous individual" is defined as:

[A]n individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). Commitment as a sexually dangerous individual is unconstitutional unless the court finds the person has serious difficulty controlling his or her behavior, and we have construed the definition of a sexually dangerous individual to require a connection between the disorder and dangerousness, including evidence showing the individual has serious difficulty controlling his behavior, which

distinguishes a sexually dangerous individual from other dangerous persons. *Matter of G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719.

[¶ 16] The civil commitment law creates minimum guidelines. The statute gives a clear definition of a sexually dangerous individual and defines the terms used. *See* N.D.C.C. § 25–03.3–01 (defining "sexual act," "sexual contact," "sexually predatory conduct," and other terms). The law provides a "reasonable person with adequate and fair warning of the proscribed conduct." Under the reasonable person standard, a person of common intelligence does not need to guess at the law's meaning. The law provides that a state's attorney may file a petition alleging a person is a sexually dangerous individual if "it appears that an individual is a sexually dangerous individual." N.D.C.C. § 25–03.3–03. Section 25–03.3–01(8), N.D.C.C., defines a sexually dangerous individual, and section 25–03.3–01 defines remaining key terms. Chapter 25–03.3, N.D.C.C., also sets out the procedures for the commitment of a sexually dangerous individual, including admissible evidence and the State's burden to show by clear and convincing evidence that an individual is sexually dangerous. *See* N.D.C.C. § 25–03.3–13.

[¶ 17] Maedche also contends his indecent exposure conviction is neither a "sexual act" nor "sexual contact" as defined in N.D.C.C. §§ 25–03.3–01(6) and (7), which illustrates the vagueness of ch. 25–03.3. The State agrees indecent exposure is neither a "sexual act" nor "sexual contact," as defined by N.D.C.C. § 25–03.3–01, but contends nothing in chapter 25–03.3 requires that the "index offense" be the source of a civil commitment petition. Section 25–03.3–15, N.D.C.C., provides, "Notwithstanding any other provision of law, in any proceeding pursuant to this chapter, evidence of prior sexually predatory conduct or criminal conduct, including a record of the juvenile court, is admissible." N.D.C.C. § 25–03.3–15. Additionally, all sexually predatory conduct may be considered in an analysis under N.D.C.C. § 25–03.3–01(8), including conduct not resulting in a charge or conviction. *Matter of A.M.*, 2009 ND 104, ¶ 10, 766 N.W.2d 437. Section 25–03.3–01(8) defines a sexually dangerous individual as one who has engaged in sexually predatory conduct, which includes a sexual act or sexual contact. N.D.C.C. §§ 25–03.3–01(8) and (9). While Maedche's indecent exposure offense may not be a sexual act or sexual contact, he admitted to molesting young girls as an adult. Though the incidents were not charged or prosecuted, they were sexually predatory conduct that was permissible for the district court to consider.

[¶ 18] Chapter 25–03.3 is not unconstitutionally void for vagueness.

### B

[¶ 19] Maedche also argues the district court erred in considering his pre-polygraph interview and polygraph examination disclosures, because doing so violated his unspecified "due process rights" and privilege against self-incrimination.

[¶ 20] The U.S. Supreme Court, in *Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986), held that Illinois' Sexually Dangerous Persons Act withstood a constitutional challenge that it violated a petitioner's Fifth Amendment privilege against self-incrimination. In that case, the U.S. Supreme Court held the civil commitment proceedings were not "criminal" within the meaning of the Fifth Amendment, and due process does not independently require application of the privilege. *Allen v. Illinois*, 478 U.S. 364, 375, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). The Supreme Court noted it was considering a

claim that the sexually dangerous person proceeding was itself "criminal," and not a claim that the statements to a psychiatrist might be used to incriminate the petitioner in some future proceeding. *Id.* at 368, 106 S.Ct. 2988.

[¶ 21] Maedche argues North Dakota's civil commitment statute, unlike the Illinois law, is punitive and thus *Allen* does not apply. Maedche contends that unlike the statutory scheme at issue in *Allen,* North Dakota law offers no protection against the use of statements made in treatment in subsequent criminal proceedings. Maedche contends that while N.D.C.C. § 25–03.3–16 limits the admissibility of the ultimate "determination" of the civil-commitment court in a subsequent criminal proceeding, it does not address the admissibility of the evidence on which the finding was made. N.D.C.C. § 25–03.3–16; *see also Matter of G.R.H.,* 2008 ND 222, ¶ 23, 758 N.W.2d 719 (Kapsner, J., concurring). Maedche claims that while treatment may be the stated purpose of North Dakota's civil commitment statute, the procedures used and the consequences imposed make the statute punitive. The U.S. Supreme Court, in *Allen,* stated:

> [T]he civil label is not always dispositive. Where a defendant has provided "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" that the proceeding be civil, it must be considered criminal and the privilege against self-incrimination must be applied.

*Allen,* 478 U.S. at 369 n. 1, 106 S.Ct. 2988.

[¶ 22] We addressed the civil nature of North Dakota's sexually dangerous individual commitment proceedings in *Interest of M.D.,* 1999 ND 160, 598 N.W.2d 799:

> The legislature has clearly expressed its intent to create a civil, rather than

criminal, procedure in N.D.C.C. ch. 25–03.3. The sexually dangerous individual commitment provisions have been placed in Title 25 of the Century Code, entitled "Mental and Physical Illness or Disability." The provisions are close in proximity and content to the provisions for civil commitment of the mentally ill or chemically dependent, contained in N.D.C.C. ch. 25–03.1. Thus, the legislature has demonstrated its "manifest intent" to create a civil proceeding, and N.D.C.C. ch. 25–03.3 will be found to violate double jeopardy only if M.D. provides the "clearest proof" that the statutory scheme is "so punitive either in purpose or effect as to negate" the legislative intent to deem it civil. [*Kansas v.*] *Hendricks,* 521 U.S. [346] 361 [117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)].

*Interest of M.D.,* 1999 ND 160, ¶ 27, 598 N.W.2d 799. In *M.D.,* we noted that chapter 25–03.3 requires annual mental examinations and reviews by the court, gives the committed individual the right to petition for discharge annually, and places the clear and convincing burden of proof on the State. *Id.* at ¶¶ 28–30. We concluded the appellant failed to provide the proof necessary to negate the legislative intent to make the civil commitment statute civil. *Id.* at ¶ 31.

[¶ 23] Similarly, here Maedche has not offered "the clearest proof" that North Dakota's statutory scheme is "so punitive" that it must be considered criminal. Our North Dakota statute, like the statute at issue in *Allen,* focuses on treatment and predicting future behavior. Sexually dangerous individuals are committed to the care, custody, and control of the executive director of the North Dakota Department of Human Services. N.D.C.C. § 25–03.3–13. The director then places the committed individual in "the least restrictive available" treatment facility or program.

N.D.C.C. § 25–03.3–13. Each year, the committed individual may ask the court for discharge, and the State must show by clear and convincing evidence the individual remains a sexually dangerous individual. N.D.C.C. § 25–03.3–18. Maedche has not offered "the clearest proof" or cited any case law that our state's statutory scheme violates his privilege against self-incrimination or his "due process rights." The district court appropriately considered Maedche's pre-polygraph interview and polygraph examination disclosures.

### III

[¶ 24] Maedche does not argue the district court was clearly wrong in concluding he is a sexually dangerous individual on the basis of the evidence presented. Chapter 25–03.3, N.D.C.C., is not void for vagueness, and because it is not criminal, Maedche's constitutional rights were not violated.

[¶ 25] The district court order civilly committing Maedche as a sexually dangerous individual is affirmed.

[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 27] I respectfully dissent.

[¶ 28] In 1986 in *Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986), the United States Supreme Court held the Illinois commitment procedures were not "criminal" for purposes of the Fifth Amendment's guaranty against compulsory self-incrimination. Statements used to commit Allen were used for treatment, but could not be used in any subsequent criminal proceeding. But, the Court cautioned:

[T]he civil label is not always dispositive. Where a defendant has provided "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" that the proceeding be civil, it must be considered criminal and the privilege against self-incrimination must be applied. [*United States v. Ward*], 448 U.S. [242] at 248–249 [100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)].

*Allen,* 478 U.S. at 369, 106 S.Ct. 2988.

[¶ 29] Similarly, this Court in 1999 held the commitment laws of this state are civil in nature, based upon express legislative intent to provide treatment. *Interest of M.D.,* 1999 ND 160, ¶¶ 27–31, 598 N.W.2d 799.

[¶ 30] Over ten years of experience with our commitment laws has taught that treatment is illusory and that confinement as a preventive measure is problematic when measured against the punishment prescribed for the same acts under the criminal law. For these reasons, our sexual predator commitment law has to be regarded as punitive in nature, and we must provide the usual protections afforded a criminal defendant. This record will demonstrate why.

[¶ 31] Maedche was compelled, as a condition of his probation, to take a polygraph examination. As part of that examination, he met, not with a therapist, but with BCI Agent Maixner who conducted an examination of Maedche's sexual activities and fantasies going back to his childhood. If Maedche failed to respond, the conditions of his probation were violated and he could lose his liberty, presumably for the time to which he could originally have been sentenced. N.D.C.C. § 12.1–32–07(6). Because he did comply with the conditions of his probation, he has lost his liberty for an indefinite period of time. The trial court said nothing about the context in which Maedche gave his statement, but merely concluded that because civil

commitment proceedings are civil in nature, the Fifth Amendment protection against compulsory self-incrimination does not apply. *But see Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

[¶ 32] As a result of his compliance, Maedche disclosed the only act he engaged in as an adult which qualifies as sexually predatory conduct, as acknowledged by the district court.

> [D]uring the evaluation, T.M. admitted that in 2002 he molested an eight year old girl on two occasions. He admitted that while the girl was on his lap, he rubbed her vaginal area against his erect penis while both were clothed. He was an adult at the time and the girl was a minor under the age of 15. These admissions, which were the subject of T.M.'s motion in limine which was denied by the Court, satisfy the definition of sexually predatory conduct under N.D.C.C. § 25–03.3–01(9).

Prior to Agent Maixner's interview with Maedche, this act was unknown to law enforcement. The act was a sexual assault on an eight-year-old victim, committed when Maedche was nineteen or twenty years old. Maedche could not have been compelled to give his testimony in a criminal prosecution for the conduct. However, his compelled disclosure is used to take his liberty for an indefinite period of time.

[¶ 33] There are, of course, other sexual incidents in Maedche's record, including the charge of indecent exposure for which Maedche was on probation. In the opinion of Dr. Lincoln Coombs, a forensic psychologist at the North Dakota State Hospital, his known sexual history, prior to the disclosure of the 2002 sexual assault, was insufficient to commit Maedche. Thus, it was the compelled disclosure that was the necessary finding for the commitment.

[¶ 34] None of the prior history is irrelevant, but we should acknowledge the level of sexual activity sufficient to deprive a person of liberty for an indefinite period of time. As an adult, Maedche has exposed himself to young children on two known occasions and was prosecuted for one. These acts do not qualify as sexually predatory conduct under our civil commitment statute.

[¶ 35] As a juvenile in 1994 and 1995, when Maedche was himself twelve and thirteen years old, he had victims who were also minors whom he touched. This was all known to Dr. Coombs who indicated that without an adult act, "it is unlikely that Mr. [Maedche] would be considered to be 'likely to engage' in future sexually predatory conduct."

[¶ 36] As the hearing transcript discloses, Maedche's conduct in 1994 and 1995, when he was between twelve and fourteen years old, figured into the scores used on his MnSOST–R and Static–99, actuarial tests used to *predict* whether he will offend again, as they had been for Dr. Coombs. The trial court relied upon these actuarial measures to determine that Maedche should be committed. Given the history, the actuarial tests used by the state's witness, tell us there is between a 49 and 54% *chance* that sometime within six to fifteen years, Maedche will offend again.

[¶ 37] I have previously stated my concerns with self-incriminating statements made in the course of treatment during commitment and the dilemma it presents to the sexual offender with a desire to make use of the treatment. *See Matter of G.R.H.*, 2008 ND 222, ¶¶ 23–25, 758 N.W.2d 719 (Kapsner, J., concurring). These facts present a situation further removed from such treatment. Officer Weigel testified that Maedche was on probation and required to undergo the poly-

graph examination as a condition of his probation, part of his criminal sentence.

[¶ 38] BCI Agent Maixner is not a therapist. The record is also instructive from the perspective of those qualified therapeutic professionals who interviewed Maedche. The psychological evaluation of Robert D. Lisota, Ph.D., the state's psychologist who submitted an evaluation on behalf of petitioner, contains the following:

> Mr. Maedche was informed that he had the right to refuse interviews and that this would not prejudice his evaluation. He was informed he had the right to refuse to answer any individual question in interview and this would not prejudice his evaluation. He was informed an evaluation would be completed in any event. He was encouraged to speak with his attorney prior to deciding whether to interview with the undersigned, which he did.[1]

However, the underlying data supporting the commitment is based upon a compelled and uncounseled polygraph examination.

[¶ 39] I would therefore hold that Maedche was committed in violation of his rights against self-incrimination, and dissent.

[¶ 40]   CAROL RONNING KAPSNER

---

1.   *See Ethical Principles of Psychologists and Code of Conduct* Standard 3.10 Informed Consent; Standard 9.03 Informed Consent in Assessments; Standard 10.01 Informed Consent to Therapy (Am. Psychological Ass'n 2010).