2008 ND 25

**In the Matter of David Raymond BARRERA.**

**Jacqueline Ann Gaddie, Grand Forks County Assistant State's Attorney, Petitioner and Appellee**

v.

**David Raymond Barrera, Respondent and Appellant.**

No. 20070125.

Supreme Court of North Dakota.

Feb. 21, 2008.

Dale R. Rivard, Assistant State's Attorney, Grand Forks, ND, for petitioner and appellee.

Troy R. Morley, Reichert Armstrong Law Office, Grand Forks, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   David Barrera appealed a district court order committing him to the custody of the Department of Human Services as a sexually dangerous individual. We affirm.

## I.

[¶ 2]   In 1995, Barrera was convicted of gross sexual imposition for an incident involving a seven-year-old female. He was sentenced to ten years imprisonment and released in 2004. While incarcerated, Barrera refused to complete sex offender treatment, drug and alcohol treatment and an anger management program. In August 2005, he pled guilty to failing to register as a sex offender and was sentenced to six months imprisonment. In January 2006, the State petitioned to commit Barrera as a sexually dangerous person.

[¶ 3]   Three psychologists testified as experts at Barrera's January 2007 hearing: Dr. Joseph Belanger and Dr. Lynne Sullivan on behalf of the State and Dr. Gregory Volk at Barrera's request. Each interviewed Barrera and reviewed his prison record and criminal history. Each diagnosed him with an antisocial personality disorder. Dr. Belanger and Dr. Sullivan both concluded to a reasonable degree of scientific certainty that Barrera is likely to engage in further acts of sexually predatory conduct because of his antisocial personality disorder. Dr. Volk stated Barrera met the definition of a "sexually dangerous individual" and recommended completion of a sex offender treatment program prior to releasing Barrera into the community.

[¶ 4]   The district court found the State met its burden and granted the petition for civil commitment. Barrera argues the district court decision was clearly erroneous.

## II.

[¶ 5]   We apply a "modified clearly erroneous" standard of review for appeals from civil commitments of sexually dangerous individuals under N.D.C.C. ch. 25–03.3. *Matter of Anderson,* 2007 ND 50, ¶ 21, 730 N.W.2d 570. "We will affirm a district court's commitment order unless the order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *Id.* (quoting *In re G.R.H.,* 2006 ND 56, ¶ 8, 711 N.W.2d 587). Involuntary civil commitment of a person is authorized under N.D.C.C. ch. 25–03.3 if the person is found to be a "sexually dangerous individual." A "sexually dangerous individual" is defined by a three-part test:

(1) the individual has engaged in sexually predatory conduct;

(2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and

(3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

*Anderson,* at ¶ 22 (citation omitted). *See also* N.D.C.C. § 25–03.3–01(8).

## A.

[¶ 6] The first element, "sexually predatory conduct," includes engaging or attempting to engage in a sexual act or sexual contact with another individual, or causing or attempting to cause another individual to engage in a sexual act or sexual contact, if this victim is a minor and the actor is an adult. N.D.C.C. § 25–03.3–01(9)(a)(7). The victim in Barrera's gross sexual imposition conviction was a seven-year-old female. This element is met.

## B.

[¶ 7] Barrera argues he was not diagnosed with a sexual disorder and therefore should not meet the test for civil commitment of a sex offender. Diagnosis of a sexual disorder, however, is not required under N.D.C.C. § 25–03.3–01(8). Rather, an individual satisfies the requirements of this section if diagnosed with "a personality disorder, or other mental disorder or dysfunction...." N.D.C.C. § 25–03.3–01(8). See also Anderson, at ¶ 38. All three experts diagnosed Barrera as having an antisocial personality disorder, based on numerous factors outlined in each expert's individual report. This element is met.

## C.

[¶ 8] The third element required for commitment is that the disorder "makes the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others." N.D.C.C. § 25–03.3–01(8). "[P]roof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case." Anderson, at ¶ 33 (citation omitted).

### 1.

[¶ 9] Dr. Belanger testified the combination of an antisocial personality disorder and a predecessory act of sexually predatory conduct establishes the initial opinion that Barrera is likely to reoffend. On the MnSost–R, Dr. Belanger scored Barrera at + 13, representing a seventy-eight percent re-arrest rate for a specific physical contact sexual offense within six years. Dr. Belanger said this score, combined with Barrera's failure to complete sex offender treatment and the absence of factors that might lower Barrera's risk of recidivism, contributed to his final opinion that Barrera's personality disorder renders him likely to engage in recidivist sexually predatory conduct. The trial court found that Barrera's score on the PCL–R placed him in the 99th percentile ranking for psychopathy and that while the PCL–R score "does not necessarily apply to sex offender recidivism," it "does indicate that a person has serious difficulties in controlling his proclivities or has diminished volitional control."

### 2.

[¶ 10] Dr. Sullivan also found a score of + 13 on the MnSost–R. Additionally, she scored Barrera at 2 on the Rrasor, indicating a twenty-one percent recidivism rate over ten years and a 5 on the Static–99, which is medium to high risk with a recidivism rate of forty percent over fifteen years. She also found a high risk level using the PCL–R2. Dr. Sullivan stated antisocial personality disorders predispose an individual to disregard and violate the rights of others to his own ends. She was concerned that Barrera viewed himself as posing "no risk whatsoever," as that is a dynamic risk factor for re-offending. Dr. Sullivan stated Barrera did not complete

sex offender and alcohol treatment, even though treatment lessens the risk of alcohol contributing to future sexually violent offenses. She also noted Barrera had no plans to prevent himself from engaging in sexually offensive conduct in the future. Dr. Sullivan testified that Barrera possessed a number of psychopathic traits but did not possess any traits which would mitigate his high risk. She concluded to a reasonable degree of scientific certainty that Barrera is likely to engage in further acts of sexually predatory conduct by virtue of his personality disorder.

3.

[¶ 11] Using MnSost–R, Dr. Volk found a moderate level of risk with a forty-five percent recidivism rate, a moderate to high risk level using the Static–99 and a moderate level of risk on the Rrasor. He scored Barrera as 28 on the Hare PCLR test, indicating a strong propensity for psychopathic personality or behavior. Dr. Volk testified that Barrera's failure to complete sex offender treatment would increase these risk levels overall.

[¶ 12] In Dr. Volk's opinion, there is a risk that Barrera's mental disorder makes him likely to engage in further acts of sexually predatory conduct. Dr. Volk listed several high risk characteristics possessed by Barrera, including limited remorse for the victim, attempts to conceal facts from the examiner, limited awareness on how to prevent future assaults, resistance to treatment, and a history of physical aggression, substance abuse and suppression of emotions. It was Dr. Volk's opinion that Barrera should undergo sex offender treatment before being released.

[¶ 13] The testimony presented shows Barrera's antisocial personality disorder renders him more likely to disregard the rights of others to achieve his own ends. This is demonstrated by Barrera's extensive criminal history and previous sexual offense. Testimony also established that Barrera's failure to complete sex offender treatment and an alcohol treatment program increased his risk levels overall. We conclude the district court's commitment order is supported by clear and convincing evidence and therefore is not clearly erroneous.

[¶ 14] We affirm.

[¶ 15] MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 16] I concur in the result reached by the majority. However, rather than analyzing Barrera's actuarial test scores in an effort to predict Barrera's likelihood of recidivism, I would note the importance of the district court's ability to make the "ultimate decision to determine whether the State has met its burden of producing clear and convincing evidence sufficient for commitment" by considering evidence other than actuarial test scores. *Interest of P.F.*, 2006 ND 82, ¶ 29, 712 N.W.2d 610 (Kapsner, J., concurring).

[¶ 17] As I have explained in prior decisions, "[a] psychological test cannot act as a substitute for independent judicial review," and the district court may take into account a multiplicity of factors or evidence, beyond actuarial test scores, in deciding whether an individual is suited for commitment as a sexually dangerous individual. *Interest of P.F.*, at ¶ 29 (Kapsner, J., concurring). The fact that Barrera's score on the RRASOR only indicates medium risk of re-offense, and his score on the Static–99 did not indicate a high risk of re-offense, does not determine whether there is clear and convincing evidence to support his commitment. Actuarial tests speak to the likelihood of recidivism of a population of people having similar characteristics. They say nothing about the likelihood of

an individual within that population to offend again.

[¶ 18] The district court was provided with evidence of the nature of Barrera's prior sexually predatory conduct, namely, his conviction for sexually assaulting a young child. There was evidence demonstrating the existence of mental illnesses, an anti-social personality disorder and psychopathy, which together create a serious difficulty in Barrera's ability to control his behavior. The district court received evidence of Barrera's resistance to sex offender treatment, his lack of remorse for victims, limited self-awareness or plans for preventing future assaults, his history of impulsive physical aggression, and issues of substance abuse that inhibit his ability to control his actions. These facts may be weighed and considered by the district court. For these reasons, I would find clear and convincing evidence supports the order of the district court and affirm the order committing Barrera as a sexually dangerous individual.

[¶ 19] CAROL RONNING KAPSNER