2008 ND 208

**In the Matter of M.D.**

**Brian D. Grosinger, Assistant State's Attorney, Petitioner and Appellee**

v.

**M.D., Respondent and Appellant.**

**No. 20080082.**

Supreme Court of North Dakota.

Nov. 19, 2008.

Brian D. Grosinger, Assistant State's Attorney, Mandan, N.D., for petitioner and appellee.

Wayne D. Goter, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] M.D. appeals a district court order denying his petition for discharge from commitment as a sexually dangerous individual. We affirm.

I

[¶ 2] In 1998, M.D. was civilly committed as a sexually dangerous individual, and this Court affirmed the district court's commitment order. *Interest of M.D.*, 1999 ND 160, 598 N.W.2d 799.

[¶ 3] For the first time since his commitment, M.D. petitioned for discharge in 2007 under N.D.C.C. § 25–03.3–18(1); a discharge hearing was held in March 2008. The district court appointed Dr. Robert G. Riedel as M.D.'s independent expert evaluator. On behalf of the State, Dr. Lynne Sullivan conducted a sexually dangerous individual annual reevaluation of M.D. The two experts disagreed about whether M.D. remains a sexually dangerous indi-

vidual. Dr. Riedel testified M.D. is not a sexually dangerous individual, because he is not likely to engage in further acts of sexually predatory conduct. Dr. Riedel based his opinion mainly on the scores of several actuarial instruments he administered, including MnSOST–R, RRASOR, and Static–99, which showed a low to moderate risk of reoffending. He also conducted a two-hour interview with M.D. and reviewed M.D.'s chart, expressing concerns regarding several inconsistencies. Dr. Sullivan, on the other hand, testified M.D. remains a sexually dangerous individual on the basis of M.D.'s chart notes from 2007, which indicated not only that M.D. had not completed sex offender treatment but that, in fact, he had regressed in his treatment. Dr. Sullivan's reevaluation report also indicated that M.D. had engaged in a secret, against-the-treatment-rules, 18–month–long homosexual relationship with a young-looking resident and that he had made several troubling comments related to his sexual drive and history as a sex offender. Dr. Sullivan testified M.D.'s treatment provider had explained to her that after M.D. caused distractions during treatment sessions, she asked M.D. to remove himself from the treatment group, but not from the room; he was assigned other tasks such as taking notes from the group discussions in order to participate in the therapy sessions. M.D. was requested to remove himself because, in the treatment provider's opinion, M.D. was engaging in sexual fantasies about other residents' disclosure of their past sexual offenses and about two young-looking residents participating in the group. Dr. Sullivan testified the combination of M.D.'s sexual and personality disorder, his lack of motivation to complete treatment, his statements about his sexual drive, and his rule-breaking behavior of engaging in sexual relationships with other residents indicates he is at high

risk of reoffending, has serious difficulty controlling his behavior, and may not be really motivated to change that behavior. In Dr. Sullivan's professional opinion, M.D. has not progressed in his treatment to the point that his reoffending would be less than likely.

[¶ 4] After considering the testimony of the two experts, the district court found M.D. continues to be a sexually dangerous individual, and denied his petition for discharge on March 25, 2008.

[¶ 5] The district court had jurisdiction of the discharge hearing under N.D. Const. art. VI, § 8, and N.D.C.C. § 25-03.3-02. The appeal from the order was timely under N.D.C.C. § 25-03.3-19. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25-03.3-19.

## II

■ [¶ 6] On appeal, M.D. argues the State did not prove by clear and convincing evidence that he is likely to commit further sexually predatory acts.

■ [¶ 7] Under a modified clearly erroneous standard, we affirm a district court order denying a petition for discharge from commitment as a sexually dangerous individual unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. *Matter of E.W.F.*, 2008 ND 130, ¶ 8, 751 N.W.2d 686. The State must prove by clear and convincing evidence that the committed individual remains a sexually dangerous individual. N.D.C.C. § 25-03.3-18(4). A sexually dangerous individual is a person who:

"[has] engaged in sexually predatory conduct ... has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other

mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

N.D.C.C. § 25-03.3-01(8). In *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court concluded that commitment as a sexually dangerous individual cannot constitutionally be sustained without determining that the person to be committed has serious difficulty in controlling his or her behavior. Therefore, consistent with N.D.C.C. § 1-02-38(1), we have construed the definition of a sexually dangerous individual to require that there must be a nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons. *Matter of G.R.H.*, 2006 ND 56, ¶ 18, 711 N.W.2d 587. In cases of conflicting testimony, the district court is the best credibility evaluator. *Matter of Hehn*, 2008 ND 36, ¶ 23, 745 N.W.2d 631. "It is not the function of this Court to second-guess the credibility determinations made by the trial court." *Id.*

[¶ 8] M.D. does not dispute that he previously has engaged in predatory conduct, and has conceded that he has been diagnosed with disorders that meet the criteria under the second prong of N.D.C.C. § 25-03.3-01(8). M.D. instead argues the State failed to prove, by clear and convincing evidence, that he is likely to engage in further acts of sexually predatory conduct.

[¶ 9] M.D. argues his case is unique because he was the first person to be committed as a sexually dangerous individual under Chapter 25-03.3 of the North

Dakota Century Code, and his original commitment was based mainly on the evaluators' reasoning and assessment without much reliance on risk assessment instruments. He contends Dr. Riedel's assessment of the likelihood of his reoffending on the basis of risk assessment inventories is more reliable because nearly all authorities on the subject advocate their use, or a mixture of risk assessment inventories and clinical judgments. Dr. Riedel testified M.D. is not likely to reoffend, mostly because M.D. scored low to moderate in all the risk assessment instruments he administered, such as the MnSOST–R, RRA-SOR, and Static–99.

[¶ 10] We have previously explained, "The fact that . . . actuarial test scores [do] not give rise to scores showing a high risk of re-offending does not preclude the fact-finder from coming to an alternative conclusion." *Matter of Hehn*, 2008 ND 36, ¶ 21, 745 N.W.2d 631. That the actuarial tests do not indicate an individual is "statistically likely to re-offend is of little consequence," because the ultimate decision to determine whether there is clear and convincing evidence sufficient for commitment rests with the district court. *Id.*

[¶ 11] In this case, the district court was presented with clear and convincing evidence that M.D. is likely to commit further acts of sexually predatory conduct. The evidence shows that M.D. has not completed sex offender treatment since his commitment in 1998. Both Dr. Sullivan and Dr. Riedel agreed that successful treatment completion decreases the likelihood of reoffending. In fact, this Court in *Matter of Barrera* concluded expert testimony established that a committed sex offender's failure to complete sex offender treatment and an alcohol treatment program increased his risk levels overall. 2008 ND 25, ¶ 13, 744 N.W.2d 744. Although M.D. attributed his failure to progress in treatment to the way he was treated by the treatment provider from November 2006 to January 2007, the evidence showed that he had not been excluded from treatment—while not included in the group discussions, he was assigned to take notes from the group and state what he had learned from each group session. According to Dr. Sullivan, M.D. continues to show symptoms of attraction to adolescent males—the peer with whom M.D. had an 18–month–long sexual relationship while in treatment was reported to bear a strong physical resemblance to an adolescent male. Moreover, M.D. has reportedly not done anything to lower his high risk of future sexually predatory conduct. In light of M.D.'s failure to progress in treatment, his sexual relationship with a young-looking resident in violation of the treatment program rules, and his lack of empathy for his victims, we are convinced that the district court order is supported by clear and convincing evidence. The evidence also shows that M.D. has serious difficulty controlling his behavior, which is what distinguishes a sexually dangerous individual from the " 'dangerous but typical recidivist convicted in an ordinary criminal case.' " *Matter of Hehn*, 2008 ND 36, ¶ 19, 745 N.W.2d 631 (quoting *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)).

III

[¶ 12] We affirm the district court order denying M.D.'s petition for discharge from his commitment as a sexually dangerous individual.

[¶ 13] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 14] I respectfully dissent. The district court's denial of M.D.'s petition for discharge is clearly erroneous based on this record.

## I.

[¶ 15] The State's expert, Dr. Lynne Sullivan, indicated M.D. has not completed sex offender treatment, but has regressed in his treatment. M.D. was civilly committed in 1998; thus, he has been civilly committed for ten years. The fact that he has been committed for ten years, alone, does not suggest he will remain in treatment indefinitely or that he will never successfully complete treatment, but it does call into question the effectiveness of the treatment program.

## II.

[¶ 16] To continue to involuntarily commit an individual, the State must show "by clear and convincing evidence that the committed individual remains a sexually dangerous individual." N.D.C.C. § 25–03.3–18(4); *Interest of M.D.*, 1999 ND 160, ¶ 28, 598 N.W.2d 799. The evidence relied upon by the State does not meet this burden. Indeed, much of the evidence relied upon by the State should be rejected as irrelevant.

[¶ 17] Dr. Sullivan's report noted, "M.D. had engaged in a secret, against-the-treatment-rules, 18–month–long homosexual relationship with a young-looking resident." Majority Opinion at ¶ 3. The majority indicates, and I recognize, that by engaging in these acts, M.D. violated treatment rules. The State acknowledged, however, that there is nothing in the record to suggest that the relationship is anything other than consensual; and the other "young-looking" participant is acknowledged to be an adult.

[¶ 18] Thus, M.D.'s continuing deprivation of liberty is based on engaging in a homosexual relationship with a consenting adult. His continuing and indefinite confinement is based upon activity for which the State could not punish him criminally. In *Lawrence v. Texas,* 539 U.S. 558, 563, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), the United States Supreme Court held unconstitutional a law criminalizing "sexual intercourse with another individual of the same sex." While in *Lawrence* the defendant was tried criminally for his actions, and in the present case M.D. is being civilly committed for his actions, the facts of the two cases are similar. *See id.* at 563, 123 S.Ct. 2472.

[¶ 19] Neither case involved a minor, public conduct, or prostitution. *Id.* at 578, 123 S.Ct. 2472. *Lawrence* did not pertain to individuals "who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Id.* Nothing in the present case indicates coercion or consent are an issue. Neither case pertains to the issue of "whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Id. Lawrence* involved "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." *Id.*

[¶ 20] In *Lawrence,* the actions took place in a private residence, while in the present case, the actions took place in a treatment facility, and the actions were against treatment rules. *Id.* at 562. Even so, M.D. is being confined civilly for actions for which, according to this State's criminal code, and United States Supreme Court precedent, he cannot be punished criminally. N.D.C.C. tit. 12.1; *Lawrence,* 539 U.S. at 578, 123 S.Ct. 2472. It was clearly erroneous for the district court to rely on the fact that M.D. was involved in

a homosexual relationship as sufficient to deny M.D.'s petition for discharge. Facts for which the individual cannot be criminally prosecuted can be considered but add little, if anything, to establish that the individual remains a sexually dangerous individual.

[¶ 21] M.D. is being indefinitely confined for engaging in a relationship with a consenting adult, who is "young-looking." Sexually dangerous individuals may be involuntarily civilly committed. N.D.C.C. ch. 25–03.3. To be labeled a "sexually dangerous individual," one of the requirements is that the individual is likely to engage in sexually predatory conduct. N.D.C.C. § 25–03.3–01(8). While the definition of "sexual predatory conduct" is broad, it does not include engaging or attempting to engage in a sexual act or sexual contact with a consenting adult who is "young-looking." *See* N.D.C.C. § 25–03.3–01(9); *Matter of G.R.H.,* 2006 ND 56, ¶ 38, 711 N.W.2d 587 (Kapsner, J., dissenting). Thus, this Court is affirming the district court's denial of discharge partially based on M.D.'s actions, that do not even fall within the expansive definition of sexually predatory conduct. N.D.C.C. § 25–03.3–01(9). Reliance on such a fact as meeting the statutory criteria is clearly erroneous.

[¶ 22] If M.D. had engaged in an 18–month–long heterosexual relationship with a consenting adult who was not "young-looking," rather than a homosexual relationship with a "young-looking" consenting adult, the fact that such a relationship existed, albeit against treatment rules, would have been insufficient to deny M.D.'s petition for discharge. It would not have established that M.D. is likely to engage in sexually predatory conduct. Changing the sexual orientation of the consenting adults does not make the evidence more substantial. M.D. has been involun-

tarily civilly committed for ten years. Requiring an adult, regardless of his or her sexual orientation, to be celibate for ten years seems to be such an unrealistic expectation, that one wonders how it can contribute to, rather than frustrate, the individual's therapy.

[¶ 23] When the lack of appropriate evidence of sexual dangerousness is combined with the scores M.D. demonstrated on the actuarial tests used to evaluate the statistical likelihood of recidivism, the evidence is not sufficient to meet the burden for continued and indefinite confinement. Perhaps the most telling demonstration that the law is not being correctly applied is the statement in paragraph 3 of the majority opinion: "In Dr. Sullivan's professional opinion, M.D. has not progressed in his treatment to the point that his reoffending would be less than likely." This is the reverse of the standard that actually applies under N.D.C.C. § 25–03.3–18, but it is indicative of the misapplied concept of the State's burden for continuing and indefinite involuntary commitment.

III.

[¶ 24] The district court's denial of M.D.'s petition for discharge was clearly erroneous, because it was not based on clear and convincing evidence that he remains a sexually dangerous individual. Therefore, I respectfully dissent.

[¶ 25] Carol Ronning Kapsner