2009 ND 209

### In the Matter of T.O.

**State of North Dakota, Petitioner and Appellee**

v.

**T.O., Respondent and Appellant.**

**No. 20090181.**

Supreme Court of North Dakota.

Dec. 15, 2009.

Brian D. Grosinger, Assistant State's Attorney, Mandan, ND, for petitioner and appellee.

Kent M. Morrow, Bismarck, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] T.O. appealed from the district court's order denying his petition for discharge from commitment as a sexually dangerous individual. The district court concluded T.O. remains a sexually dangerous individual. On appeal, T.O. argues the State did not prove by clear and convincing evidence that he is likely to engage in further acts of sexually predatory conduct. The district court's order was supported by clear and convincing evidence and we affirm.

I.

[¶ 2] In 2005, T.O. was civilly committed as a sexually dangerous individual. T.O. had been convicted of gross sexual imposition upon a child under the age of fifteen. He was diagnosed with antisocial personality disorder. In 2007, the district court denied T.O.'s Petition for Discharge, finding clear and convincing evidence existed showing T.O. remained a sexually dangerous individual. In 2008, T.O. requested another discharge hearing.

[¶ 3] Dr. Lynne Sullivan examined T.O. and testified for the State. Dr. Sullivan opined, based on T.O.'s original assessments using the RRASOR, Static–99, and MnSOST–R instruments, "that

[T.O.]'s actuarially assessed risk of sexual recidivism meets the criteria of 'likely to engage in further acts of sexually predatory conduct' as defined by [N.D.C.C. ch.] 25–03.3." Dr. Sullivan also indicated T.O.'s PCL–R psychopathy checklist score shows "he is unusually detached, cold, grandiose, manipulative, willing to lie, and lacking in empathy and remorse."

[¶ 4] Dr. Sullivan testified T.O.'s participation in treatment was inadequate. She explained T.O. was currently in Skills Group I, which is the lowest, or basic, level of treatment. T.O. has been repeatedly observed masturbating while on the telephone with his girlfriend. This resulted in T.O.'s demotion to the lower level treatment group. He was also moved to the most secure environment in the facility. Dr. Sullivan explained why this behavior concerned her:

> Mr. O's masturbation in public is more frequent and more exhibitionistic. I mean the fact that he's doing it in public indicates that there maybe a motive—a deviant motive—an exhibitionistic motive.... Mr. O's masturbation in public is also very resistant to redirection. He's been told several times and sanctioned to not engage in this behavior and yet he's persisted in engaging in it. That tells me that he is quite sexually driven and he is willing to violate the rules to achieve his sexual ends. In the community he would be likely to engage in sexual inappropriate behavior, such as masturbating in public as well.

T.O. has also been demoted in treatment due to rule violations, including possession of tobacco, which is contraband. Dr. Sullivan concluded T.O. would have "serious difficulty controlling his behavior in a less restrictive environment as a result of the behaviors that I've described." T.O.'s antisocial personality disorder "makes him impulsive, manipulative, insistent on achieving his own ends, willing to use others." Dr. Sullivan opined that T.O. "is likely to engage in future acts of sexually predatory conduct" and "appears to meet criteria as a sexually dangerous individual."

[¶ 5] The district court ordered Dr. Stacey Benson to examine T.O. as an independent examiner and she testified on T.O.'s behalf. Dr. Benson agreed with T.O.'s diagnosis of antisocial personality disorder. Dr. Benson indicated in her report that T.O. has been assessed as having a high risk to reoffend according to the MnSOST–R, RRASOR, and Static 2002 instruments. Although, unverified information provided by T.O. could result in a lower score on the MnSOST–R, bringing his score below the threshold for which commitment is recommended. According to the Stable 2007 instrument, T.O.'s score was in the Moderate Risk Range. Dr. Sullivan did not use the Stable 2007 instrument. Dr. Benson, in her report, acknowledged T.O.'s rule violations, including engaging in phone sex, but discounted them, "The behaviors he has displayed, while understandably inappropriate in a treatment setting, still include technically legal sexual behavior. It is perhaps unrealistic to expect him to be celibate for this entire time period." Dr. Benson explained further, "It is my belief that [T.O.]'s behavior, while remaining concerning, appears to be rather typical antisocial behavior at this point, and does not establish serious difficulty in controlling his behavior." Dr. Benson concluded, "It is my opinion that [T.O.] remains a high risk sexual offender. It is further my opinion, however, to a reasonable degree of professional and scientific certainty, that [T.O.] does NOT meet the statutory definition of a Sexually Dangerous Individual." Dr. Benson added, "I don't believe that his scores are consistent with likely to engage."

[¶ 6] The district court acknowledged in its order, "It has been established in prior proceedings that [T.O.] has engaged in sexually predatory conduct. These behaviors are outlined in both the experts' reports. [T.O.] has been diagnosed with Antisocial Personality Disorder, which is a personality disorder or other mental dysfunction." The district court noted the results of the actuarial instruments, "With one exception discussed by Dr. Benson, the result of each of those assessing instruments was that [T.O.] was in the 'high risk' category for re-offending." The district court further stated:

Dr. Benson goes on to conclude that [T.O.] has progressed to the point that he can now control his behavior. However, the evidence is to the contrary. [T.O.] has not completed treatment due to his own inability or unwillingness. In fact, at the time of the hearing, he had been placed in what is in essence a pre-treatment program to prepare persons for Stage 1 of treatment. He has not been able to control his sexual impulses, engaging in "public" masturbation and phone sex, even in the highly structured environment of the State Hospital. [T.O.] has not followed staff directives and rules, and has engaged in threatening behavior toward staff. While [T.O.] may be improving, or, in Dr. Benson's words at the hearing, "showing ability to control his behavior" thus far he has not in fact done so.

The district court concluded clear and convincing evidence showed T.O. remained a sexually dangerous individual, and issued its Order denying T.O.'s petition for discharge from commitment as a sexually dangerous individual.

## II.

[¶ 7] T.O. argues the State did not present clear and convincing evidence he remains a sexually dangerous individual.

Specifically, he argues the State did not prove he is likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

[¶ 8] This Court's standard of review for civil commitment of a sexually dangerous individual is well established:

We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard in which we will affirm a district court's order "unless it is induced by an erroneous view of the law or we are firmly convinced [the order] is not supported by clear and convincing evidence."

*Matter of Vantreece*, 2009 ND 152, ¶ 4, 771 N.W.2d 585 (quoting *Matter of G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719) (alteration in original). "The State must prove by clear and convincing evidence that the committed individual remains a sexually dangerous individual." *Matter of M.D.*, 2008 ND 208, ¶ 7, 757 N.W.2d 559 (citing N.D.C.C. § 25–03.3–18(4)). A sexually dangerous individual is one who:

is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). "[W]e have construed the definition of a sexually dangerous individual to require that there must be a nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous

persons." *M.D.*, at ¶ 7 (citing *Matter of G.R.H.*, 2006 ND 56, ¶ 18, 711 N.W.2d 587). This Court does not reweigh the credibility of witnesses whose testimony conflicts. *Vantreece*, at ¶ 4 (citing *G.R.H.*, at ¶ 7). T.O. concedes the State presented clear and convincing evidence he has previously engaged in sexually predatory conduct and has a congenital or acquired condition that is manifested by a personality or other mental disorder.

[¶ 9] The district court concluded T.O. remains a sexually dangerous individual, based on T.O.'s scores on assessment instruments, his failure to complete treatment, his failure to control his sexual impulses, and his violation of treatment program rules. Violation of treatment program rules has previously served as a basis for initiating or maintaining a person's commitment as a sexually dangerous individual. In *G.R.H.*, the petitioner, who had been diagnosed with antisocial personality disorder, repeatedly violated the treatment program's rules. *G.R.H.*, 2008 ND 222, ¶ 10, 758 N.W.2d 719. He made telephone calls to phone sex lines and engaged in sexual contact with visitors. *Id.* We stated G.R.H.'s rule violations, along with his disclosure of additional individuals upon whom he had committed sexual offenses, supported the district court's determination that he was "likely to reoffend without receiving adequate treatment in a closed setting." *Id.* at ¶ 13. We affirmed the district court's order denying G.R.H.'s petition for discharge from commitment as a sexually dangerous individual. *Id.* at ¶ 14. In *Vantreece*, the district court cited the petitioner's frequent masturbation while in the county jail as an example of his serious difficulty in controlling his behavior and the high likelihood that he would engage in further acts of predatory conduct. *Vantreece*, 2009 ND 152, ¶ 17, 771

N.W.2d 585. We affirmed the district court's commitment order. *Id.* at ¶ 19.

[¶ 10] Failure to complete treatment has also served as a basis for initiating or maintaining a person's commitment as a sexually dangerous individual. In *M.D.*, the petitioner's failure to cooperate and participate in treatment prevented him from progressing through the treatment process. *M.D.*, 2008 ND 208, ¶ 11, 757 N.W.2d 559. We acknowledged that failure to complete sex offender treatment, as well as the failure to complete alcohol dependency treatment, increases an offender's risk to reoffend. *Id.* (citing *Matter of Barrera*, 2008 ND 25, ¶ 13, 744 N.W.2d 744). We concluded M.D.'s failure to complete treatment, along with his relationship with another resident in violation of treatment program rules and his lack of empathy for his victims, supported the district court's denial of his petition for discharge from commitment as a sexually dangerous individual. *Id.* In *Vantreece*, the district court cited the petitioner's failure to cooperate with treatment as support for his commitment as a sexually dangerous individual. *Vantreece*, 2009 ND 152, ¶ 17, 771 N.W.2d 585.

[¶ 11] Here, T.O. has violated the treatment program's rules, resulting in his failure to complete treatment or progress in the treatment process. Specifically, he has violated treatment program rules by acting out sexually, similarly to G.R.H. *G.R.H.*, 2008 ND 222, ¶ 10, 758 N.W.2d 719. He has engaged in phone sex and masturbation in public, even after being sanctioned. He has failed to complete sex offender treatment, similarly to M.D., which increases the likelihood he will commit further acts of sexually predatory conduct. *M.D.*, 2008 ND 208, ¶ 11, 757 N.W.2d 559 (citing *Barrera*, 2008 ND 25, ¶ 13, 744 N.W.2d 744). The actuarial assessment instruments also indicate T.O. is

at a high risk to reoffend. As the district court noted, T.O. has displayed an inability to control his behavior, "even in the highly structured environment of the State Hospital." The State presented sufficient evidence to show T.O. is likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. The district court's order is supported by clear and convincing evidence.

[¶ 12]   We affirm the district court's order denying T.O.'s petition for discharge from commitment as a sexually dangerous individual.

[¶ 13] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.