Filed 12/18/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 261

In the Matter of M.D.

Brian D. Grosinger, Assistant State’s Attorney, Petitioner and Appellee

v.

M.D., Respondent and Appellant

No. 20120158

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Brian D. Grosinger (on brief), Assistant State’s Attorney, 210 2nd Avenue Northwest, Mandan, N.D. 58554, petitioner and appellee.

Susan Schmidt (on brief), 400 East Broadway Avenue, Suite 27, Bismarck, N.D. 58501, for respondent and appellant.

Matter of M.D.

No. 20120158

Sandstrom, Justice.

[¶1] M.D. appeals from a district court order denying his petition for discharge from commitment as a sexually dangerous individual.  M.D. argues the court’s finding that he remains a sexually dangerous individual is clearly erroneous and the court abused its discretion in granting the State’s motion for a continuance.  We affirm.

I

[¶2] In 1993, M.D. pled guilty to gross sexual imposition for engaging in sexual acts with a fourteen-year-old boy.  In 1998, M.D. was committed as a sexually dangerous individual, and this Court affirmed the commitment order.  
In re M.D.
, 1999 ND 160, 598 N.W.2d 799.  In 2007, M.D. petitioned for discharge, and the district court denied his petition.  M.D. appealed and this Court affirmed the district court order.  
In re M.D.
, 2008 ND 208, 757 N.W.2d 559.  In 2010, this Court affirmed the district court’s denial of M.D.’s second petition for discharge.  
In re M.D.
, 2010 ND 190, 795 N.W.2d 37.

[¶3] In November 2010, M.D. petitioned for discharge.  The State’s expert, Robert Lisota, Ph.D., filed a reevaluation report and later filed an updated report.  Robert Riedel, Ph.D., was appointed as an independent evaluator and filed a report.  A hearing was scheduled to be held on October 28, 2011. The State moved for a continuance on the morning of the hearing, claiming Dr. Lisota had planned to testify and had traveled to Bismarck prior to the hearing but had a medical emergency and was unable to testify.  M.D. objected to the State’s request.  The district court granted the State’s motion and ordered the State to pay Dr. Riedel’s travel expenses.  

[¶4] The hearing was rescheduled and was held on January 27, 2012.  The court considered the testimony presented at the hearing and the experts’ reports and found M.D. remains a sexually dangerous individual.  On February 21, 2012, the court entered an order denying M.D.’s petition for discharge. 

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25-03.3-02.  The appeal from the order was timely under N.D.C.C. § 25-03.3-19.  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25-

03.3-19. 

II

[¶6] 
This Court applies a modified clearly erroneous standard in reviewing a district court’s decision on a petition for discharge:

We will affirm a trial court’s order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. In reviewing the trial court’s order, we give great deference to the court’s credibility determinations of expert witnesses and the weight to be given their testimony.  The trial court is the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court’s credibility determinations.

In re J.T.N.
, 2011 ND 231, ¶ 6, 807 N.W.2d 570.

[¶7] When a committed individual petitions for discharge, the State has the burden to prove by clear and convincing evidence that the committed individual remains a sexually dangerous individual.  
J.T.N.
, 2011 ND 231, ¶ 4, 807 N.W.2d 570.  A sexually dangerous individual is:

an individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25-03.3-01(8).  “‘The phrase “likely to engage in further acts of sexually predatory conduct” means the individual’s propensity towards sexual violence is of such a degree as to pose a threat to others.’”  
In re Rubey
, 2012 ND 133, ¶ 8, 818 N.W.2d 731 (quoting 
In re Rubey
, 2011 ND 165, ¶ 5, 801 N.W.2d 702).  Additionally, the State must also prove the individual has serious difficulty controlling his behavior.  
J.T.N.
, at ¶ 5.
 

[¶8] M.D. concedes he has engaged in sexually predatory conduct and he has a sexual disorder; however, he argues the district court erred in finding there was clear and convincing evidence that his disorder makes it likely he will commit further acts of sexually predatory conduct and that he has serious difficulty controlling his behavior.  He contends there was evidence his risk of reoffending is low and he can control his behavior, including evidence from Dr. Riedel that his risk of reoffending was the lowest Dr. Riedel has ever seen using the Static-99R, that he has progressed in treatment in the past, that he has not sexually acted out in an inappropriate manner in several years, and that he has not engaged in other sexually inappropriate behavior since he was demoted in treatment for a consensual sexual relationship with another committed individual. 

[¶9] The district court considered the experts’ reports and the experts’ and M.D.’s testimony from the discharge hearing and found:

Regarding the third and fourth prongs, specifically likely to engage in further acts of predatory conduct and that the Respondent shall have serious difficulty in controlling his behavior, this Court finds these are proved by clear and convincing evidence.

Specific to the third prong, included in the Court’s finding that the Respondent is likely to engage in further acts of predatory conduct is the diagnosis of Paraphelia.  That is a sexual disorder that predisposes this offender to predatory conduct toward vulnerable, young or adolescent males.

Next, actuarial instruments that were employed by Dr. Lisota indicate that the Respondent is of sufficient risk to re-offend, showing both that he is likely to re-offend, and that he will have serious difficulty controlling his behavior.  Specifically, as detailed by Dr. Lisota the score achieved by the Respondent on the actuarial test MnSOST-R yielded an indication of “High” risk.  Regarding the Respondent’s score on the Static 99-R, the result was a score of moderate-low.  The Court finds however, that score is out-weighed by the failure of the Respondent to successfully complete treatment and the history of grooming behavior.

Specific to the fourth prong, serious difficulty in controlling his behavior, the Court relies again on the history of behavior and the failure to successfully complete treatment.  The evidence at the trial indicated the Respondent is intellectually capable of successfully completing treatment; nevertheless he has failed to do so despite over a decade of treatment.

The Court also relies on the dynamic factors identified by Dr. Lisota as evidence of the likelihood of re-offense and the serious difficulty in controlling his behavior.  Dynamic factors identified as “problematic” included: Capacity for Relationship Stability, Sex Drive/Sexual Preoccupation, Deviant Sexual Preference and Cooperation with Supervision.  Of those factors, the Court finds Sex-

Drive/Sexual Preoccupation and Deviant Sexual Preference to be of particular importance to the issue at hand.

The Court makes the additional notes.

Completion of treatment would be the most significant protective factor regarding this Respondent.  Although the Repsondent [sic] has progressed in the past, he has been demoted and never returned to prior levels.  The failure to regain prior ground is an indication of the Respondent’s attitude and shows he had not recognized the need to change his behavior.  The tendency of the Respondent to shift blame to others is illustrative of this fact.

The Court does not find the contention of Dr. Riedel that mere entry into treatment is a protective factor is persuasive.  With this respondent the level of disorder and compulsion to offend is too high for this to serve as a protective factor.

The Respondent testified on his own behalf at the hearing.  That testimony largely corroborated the diagnosis and conclusions of Dr. Lisota.  In particular, the testimony of the Respondent that he could run the treatment program, coupled with the fact that he cannot progress in the very same treatment program simultaneously demonstrates the grandiosity and the lack of insight possessed by the Respondent.

[¶10] The court’s findings are supported by clear and convincing evidence.  Dr. Lisota testified M.D. has a 54 percent chance of reoffending within six years without intensive supervision, based on his results from the MnSOST-R.  Although M.D. scored lower on the Static-99R, we have said, “‘The fact that . . . actuarial test scores do not give rise to scores showing a high risk of re-offending does not preclude the fact-finder from coming to an alternative conclusion.’”  
M.D.
, 2008 ND 208, ¶ 10, 757 N.W.2d 559 (quoting 
In re Hehn
, 2008 ND 36, ¶ 21, 745 N.W.2d 631).  The court explained why it did not find M.D.’s score on the Static-99R persuasive.  The court also explained why it did not find some of Dr. Riedel’s opinion persuasive.
  This Court does not reweigh the evidence or judge the witnesses’ credibility.  
Rubey
, 2012 ND 133, ¶ 15, 818 N.W.2d 731.  There was evidence M.D. has not successfully completed treatment, and although M.D. has shown he has the ability to progress in treatment and he advanced to stage two in the past, he was demoted after he violated treatment rules by engaging in a sexual relationship with another committed individual, and there was evidence he has not made any progress in treatment in the last year.  Dr. Lisota’s report also detailed M.D.’s lack of participation in treatment over the review period.  Although there was not evidence of recent rulebreaking, there was other evidence that M.D. has difficulty controlling his behavior and is likely to reoffend.  M.D.’s prior conviction was for engaging in sexual acts with a fourteen-

year-old boy, and there was evidence M.D. made statements in treatment during the review period that he would take advantage of an underaged black male if he knew he would not get caught.  There was also evidence M.D. admitted that he would use drugs if they were offered to him and that he would be willing to provide oral sex if someone came to his door and wanted it.  M.D. used drugs to groom his victims in the past, and he admitted substance use would be problematic for him with regard to reoffending.  Dr. Lisota testified that M.D. is afraid to change and that M.D. stated several times he is addicted to sex, drugs, alcohol, and pornography.  Dr. Lisota also testified he believes M.D. will return to his old ways if he is released, because he has not progressed or participated adequately in treatment.  The district court’s findings are supported by clear and convincing evidence and are not clearly erroneous. 

III

[¶11] M.D. argues the district court abused its discretion in granting the State’s motion for a continuance.  

[¶12] 
A motion for a continuance may be granted for good cause.  
See
 N.D.R.Ct. 6.1(b); 
see also
 N.D.C.C. § 25-03.3-13 (60-day limit for commitment proceeding after a finding of probable cause may be extended for good cause);  
M.D.
, 1999 ND 160, ¶ 15, 598 N.W.2d 799.  The district court has discretion to grant a continuance.  
In re R.O.
, 2002 ND 154, ¶ 10, 652 N.W.2d 327.  This Court will not reverse a district court’s decision absent an abuse of discretion.  
Id.
  
A court abuses its discretion if it acts arbitrarily, unreasonably, or unconscionably.  
Id.
 

[¶13] 
The State moved for a continuance on the day the discharge hearing was scheduled to be held, claiming Dr. Lisota had a medical emergency and was not available to testify because he had a bad reaction to a new medication and he sounded disoriented.  The State claimed Dr. Lisota planned to testify and had arrived in town the evening before the hearing to ensure he would be ready for the hearing.  The court granted the State’s motion, stating the witness was ready to testify but was unable to because of a medical condition, and ordered the State to pay M.D.’s expert witness’s travel expenses.  The court’s decision was not arbitrary, unreasonable, or unconscionable, and we conclude the court did not abuse its discretion.

IV

[¶14] We affirm the district court’s order denying M.D.’s petition for discharge from his commitment as a sexually dangerous individual.

[¶15] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶16] I respectfully dissent.

[¶17] M.D. was the first person ever committed under N.D.C.C. ch. 25-03.3.  
In re M.D.
, 1999 ND 160, 598 N.W.2d 799.  He has now been in treatment since 1999.  According to the State’s expert, Dr. Robert Lisota, M.D. progressed in treatment through stage 2 until he was demoted for engaging in a consensual homosexual relationship with another inmate that would have been legal outside the State Hospital but was against the rules of the State Hospital.  
See also
 
In re M.D.
, 2008 ND 208, ¶ 17, 757 N.W.2d 559 (Kapsner, J., dissenting).

[¶18] Since that time, Dr. Lisota testified M.D. “has quit sexually acting out with other residents.  And he has his good days.  He can give good feedback to peers at times.  He has done well in his cog group for the most part; less so in the core group.”

[¶19] In other words, M.D. has modified his sexual behavior and, as acknowledged by the majority opinion, there is no other evidence of other rule-breaking activity.  There is no clear and convincing evidence that M.D. is unable to control his behavior to currently satisfy the State’s burden.  
In re J.T.N.
, 2011 ND 231, ¶ 4, 807 N.W.2d 570.

[¶20] The problem with both the district court’s analysis and the majority opinion is that both are reliant upon M.D.’s history.  If that were sufficient, no committed individual could ever be released.  It is also the problem with simply relying on the “failure . . . to successfully complete treatment.”  Imposing treatment is conditional upon being able to show that a person is “likely to engage in 
further
 acts of sexually predatory conduct”; it is not enough that the person has done so in the past.  N.D.C.C. § 25-03.3-13 (emphasis added).

[¶21] The district court referred to the actuarial instruments that Dr. Lisota testified about.  Dr. Lisota indicated the MnSOST-R yielded a “High” risk of 54 percent, but that if M.D. were released under intensive supervision it would indicate a 30 percent risk.  Dr. Lisota also testified that the Static-99 yielded a moderate low score of 2, indicating a recidivism rate of 19.7 percent over a ten-year period.  The district court relied more heavily on the unfavorable predictor.  But what this fails to recognize is that neither test says anything definitive about M.D.  Actuarial instruments are statistical instruments that fairly accurately predict what a group of people will do, but cannot tell what any individual in that group will do.  That is, even assuming the unfavorable predictor is more accurate, the test does not tell you whether M.D. is part of the 54 percent that will be re-arrested within six years or within the 46 percent that will not.  Contrary to the actuarial instruments, the only evidence in this record is that M.D. can control even his sexual behavior.

[¶22] This record is devoid of clear and convincing evidence that M.D. lacks the ability to control his behavior.  The State did not meet its burden to continue to commit M.D.

[¶23] Carol Ronning Kapsner