2010 ND 8

### In the Matter of James K. HANENBERG

**Cass County State's Attorney, Plaintiff and Appellee**

v.

**James K. Hanenberg, Defendant and Appellant.**

No. 20090135.

Supreme Court of North Dakota.

Jan. 12, 2010.

Birch P. Burdick, State's Attorney, Fargo, N.D., for plaintiff and appellee.

Richard E. Edinger, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] James Hanenberg appeals a district court's order involuntarily committing him as a sexually dangerous individual. He argues the State did not prove by clear and convincing evidence that he has serious difficulty controlling his behavior. We affirm.

I

[¶ 2] Hanenberg was convicted of corruption or solicitation of a minor in March 2006. He was sentenced to imprisonment and scheduled to be released on November 18, 2008, when five years' supervised probation was to begin. On November 14, 2008, the Cass County State's Attorney petitioned to commit Hanenberg as a sexually dangerous individual under N.D.C.C. ch. 25–03.3. The district court found probable cause to believe Hanenberg was a sexually dangerous individual and transferred him to the North Dakota State Hospital for further evaluation. A commitment hearing was held in April 2009. Dr. Lynne Sullivan, a North Dakota State Hospital staff psychologist, testified on behalf of the State. Dr. Robert Riedel, a private forensic psychologist, performed an independent medical examination of Hanenberg and testified on his behalf.

[¶ 3] Dr. Sullivan diagnosed Hanenberg with paraphilia not otherwise specified, hebephilia; paraphilia not otherwise specified, nonconsent; voyeurism; fetishism; frotteurism; paraphilia not otherwise specified, zoophilia; alcohol dependence with physiological dependence; and antisocial personality disorder. She testified Hanenberg is likely to engage in further acts of sexually predatory conduct and is

at an extremely high risk of sexual reoffense. She also testified Hanenberg has serious difficulty controlling his behavior.

[¶ 4] Dr. Riedel agreed Hanenberg has engaged in sexually predatory conduct and has a mental disorder. He testified "it is arguable" whether Hanenberg is likely to engage in further acts of sexually predatory conduct. He disagreed that Hanenberg would have serious difficulty controlling his behavior if released under supervised probation.

[¶ 5] The district court found Hanenberg is a sexually dangerous individual. On appeal, Hanenberg argues the State did not prove by clear and convincing evidence that he has serious difficulty controlling his behavior. He argues that for the next four and a half years, he will be on supervised probation, which means he could be subject to house arrest, residence at a halfway house, twenty-four-hour electronic monitoring, participation in an intensive supervised program, and participation in comprehensive sex offender treatment.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25–03.3–02. The appeal was timely under N.D.C.C. § 25–03.3–19. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25–03.3–19.

## II

[¶ 7] We apply "a modified clearly erroneous" standard of review to commitments of sexually dangerous individuals, *Matter of G.R.H.*, 2006 ND 56, ¶ 8, 711 N.W.2d 587, and will affirm a district court's commitment order unless the order is induced by an erroneous view of the law or we are firmly convinced the order is not supported by clear and convincing evidence. *Id.*

[¶ 8] Chapter 25–03.3 of the North Dakota Century Code authorizes the involuntary civil commitment of a sexually dangerous individual. The Century Code defines a sexually dangerous individual as:

> [A]n individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). Additionally, the United States Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), held commitment as a sexually dangerous individual cannot constitutionally be sustained without determining the person to be committed has serious difficulty controlling his or her behavior. *Matter of G.R.H.*, 2008 ND 222, ¶ 7, 758 N.W.2d 719. Therefore, consistent with N.D.C.C. § 1–02–38(1), this Court has construed the definition of a sexually dangerous individual to require a nexus between the disorder and dangerousness, including evidence showing the individual has serious difficulty controlling his behavior, which distinguishes a sexually dangerous individual from other dangerous persons. *Id.*

[¶ 9] All sexually predatory conduct may be considered when determining whether someone is a sexually dangerous individual, including conduct not resulting in a charge or conviction. *Matter of A.M.*, 2009 ND 104, ¶ 10, 766 N.W.2d 437. The district court is the best credibility evaluator in cases of conflicting testimony, and we will not second-guess the district court's credibility determinations. *Id.*

## A

[¶ 10]   On the first prong of the sexually dangerous individual definition, Hanenberg does not dispute the district court's finding that he has engaged in sexually predatory conduct.   The district court found Hanenberg has molested a number of minors over the years and has had a number of convictions.

## B

[¶ 11]   Similarly, as to the second prong, Hanenberg does not dispute the district court's finding he has a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction. The district court found Dr. Sullivan diagnosed Hanenberg with paraphilia, hebephilia; paraphilia, nonconsent; voyeurism; fetishism; frotteurism; paraphilia, zoophilia; alcohol dependence with physiological dependence;   and   antisocial   personality disorder.

## C

[¶ 12]   Hanenberg does not dispute the district court's finding he meets the third prong of the statutory definition, or a likelihood of engaging in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.   The district court found that Hanenberg's risk assessment scores were "staggeringly high" and that his psychopathy score worked in a synergistic way to further raise his objective recidivism rates.

## D

[¶ 13]   Hanenberg's sole argument on appeal is that the State did not prove by clear and convincing evidence that he has serious difficulty controlling his behavior.   He contends that for the next four and a half years, he will be on supervised probation, which means he may be subject to house arrest, residence at a halfway house, twenty-four-hour electronic monitoring, participation in an intensive supervised program, and participation in comprehensive sex offender treatment.

[¶ 14]   Dr. Sullivan testified Hanenberg has serious difficulty controlling his behavior.   She testified that while Hanenberg was in intensive sex offender treatment in prison, he engaged in "staff splitting," or grooming and flattering the female therapist that led his group while treating the male therapist that led his group very differently.   She testified Hanenberg was unable to recognize this behavior, which is "a major problem."   She also testified that on a few occasions, Hanenberg hugged and touched a female volunteer who came to the prison for a religious retreat, in violation of the rules.   As a result of these behaviors, the treatment team found Hanenberg non-amenable to treatment.   That Hanenberg is unable to recognize and acknowledge his problematic behavior, Dr. Sullivan testified, demonstrates he is unable to take the perspective of others, incorporate feedback, and change his behavior appropriately.   She testified that in a less-controlled environment, Hanenberg could have difficulty shifting his behavior appropriately in response to feedback from someone who did not want attention from him.   She testified the multiple paraphilias and psychopathy score are what "colloquially we call ... the dynamic duo or the deadly duo.   That distinguishes him from the dangerous but typical recidivist convicted in an ordinary criminal case because that's an unusual rare combination."   She testified the "deadly duo" indicates his risk is unusually high, higher than can be estimated by the risk assessment instruments alone.

[¶ 15]   Dr. Riedel did not agree Hanenberg would have serious difficulty control-

ling his behavior in the community. He testified that while incarcerated, Hanenberg had sexuality, alcohol, and drugs available to him, and he did not take advantage of any of them. He testified that outside of a consensual hug, he was not aware of Hanenberg's participating in any sexual acts in the last several years. Additionally, Dr. Riedel testified a major contributing factor for his opinions was the fact that if released, Hanenberg would be subject to supervised probation. Dr. Riedel testified intensive supervision and other moderating factors, such as age, are sufficient to protect public safety.

[¶ 16] Hanenberg contends Dr. Sullivan agreed that under certain circumstances, house arrest or a halfway house would be sufficient to allow him to control his behavior. At the hearing, however, Dr. Sullivan testified Hanenberg required "twenty four hour essentially visual monitoring." While Hanenberg contends this statement means he would not have difficulty controlling his behavior with the proper supervision, such an argument is without merit—rather, Dr. Sullivan's testimony provides further evidence that Hanenberg has difficulty controlling his behavior. Additionally, Hanenberg does not contend he will be subject to the conditions of house arrest, residence at a halfway house, twenty-four-hour electronic monitoring, participation in an intensive supervised program, and participation in comprehensive sex offender treatment, but only that he is subject to such conditions "at the sole discretion and supervision" of his probation officer.

[¶ 17] The district court is the best credibility evaluator in cases of conflicting testimony, and we will not second-guess the district court's credibility determinations. *Matter of A.M.*, 2009 ND 104, ¶ 10, 766 N.W.2d 437. Here, the two experts who testified at the hearing disagreed about whether Hanenberg has serious difficulty controlling his behavior. The district court found the State proved by clear and convincing evidence Hanenberg has serious difficulty controlling his behavior. The district court found Dr. Riedel's mitigating factors of cost to the community, probation, and age were not convincing. The district court found probation, even with the possibility of revocation, is not a substitute for confined treatment. Finally, it found those committing sexually predatory acts do not tend to "age out" until their sixth decade or later, and those committing sexually predatory contacts, like fondling and molestation, do not tend to "age out" until their seventh decade or later.

[¶ 18] Considering the evidence presented, the district court did not clearly err when it found by clear and convincing evidence that Hanenberg is a sexually dangerous individual.

### III

[¶ 19] We affirm the commitment order.

[¶ 20] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.